IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| J.P. KING AUCTION COMPANY, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION No: 4:13-cv-01520 ) |
| RUSSELL WICKS and EVELYN WICKS, | ) ) ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM OPINION**

This cause comes on to be heard on the plaintiff's Motion for Expedited Hearing filed on September 10, 2013. The defendants have filed a Motion to Dismiss the complaint. The court conducted a recorded phone conference on September 18, 2013 at which the parties agreed that the court should render a final judgment with regard to the issues in the case, regardless of whether the issues have been totally addressed other than in briefs, recorded oral discussion, etc.

The main issue is whether this court should somehow vacate or stay the pending arbitration hearing in Montana.[1] Plaintiff primarily bases its Petition to Stay Arbitration and Enforce Choice of Law, Jurisdiction, and Venue Provision on its argument that this court should enforce choice of law, jurisdiction and venue provisions contained in an Auction Listing Agreement ("ALA") with the defendants dated April 25, 2012.[2]

---

[1] When asked about this court's jurisdiction to vacate the arbitrator's interlocutory ruling, the plaintiff said it was a good question.

[2] The plaintiff stated that the ALA is not an adhesion agreement because the terms were "negotiated." The plaintiff could not tell the court what terms had been negotiated other than fill in the blank type terms as to parties, amounts, property description, etc. The ALA has every appearance of being a standard auctioneer type agreement which would be customarily used by the plaintiff. There may be an arguable issue as to whether the choice of law, jurisdiction, and venue clauses in Section 17 of the ALA are inclusive of the arbitration clause in Section 16 of the

1

The ALA states that claims or controversies will be resolved by arbitration pursuant to Judicial Administration Mediation Service's ("JAMS") Comprehensive Arbitration Rules and Procedures. The ruling to which the plaintiff objects was by a JAMS' arbitrator.

The Real Property Sale Contract also has a choice of law, jurisdiction and venue statement.[3] This provision, Section XXII, provides:

> This Sale Contract ... and all related dealings of the parties will be exclusively construed and governed in accordance with the laws of the State of Montana, without regard to its conflict of laws principles. The exclusive jurisdiction and venue for any controversy or claim and the settlement thereof between the parties will be the County of Ravalli in the State of Montana, or as mutually agreed by the Parties.

While the plaintiff did not sign the Sale Contract, it has provisions related to the auctioneer. The Sale Contract provides that "[a]ny action, claim, controversy, counterclaim, dispute, or proceeding arising out of the Property Issues and involving Seller, Bidder, Buyer, or Auctioneer, in any combination (*each a 'Party'*)." The Contract further states that "King and King's Broker [are] collectively referred to as 'Auctioneer.'" The arbitrator stated "[t]he Sale Contract arbitration clause is broad in both the disputes and parties it covers. It specifically includes disputes involving King as the Sellers' broker." The plaintiff definitely had an interest in earnest money which might be due from the buyer.

The court, given more time, could more fully develop this opinion. The plaintiff, however, has requested an expedited ruling. Suffice it to say that this court agrees that the defendants had a right to seek arbitration outside of Alabama and that the arbitrator's ruling

---

ALA.

[3] As a further indication of who furnished the forms, the Real Property Sale Contract is headed up: "J.P. King Auction Company, Inc. Real Property Sale Contract." The contract has numerous provisions related to the auctioneer. The court has underlined a number of these provisions in attached Exhibit A. The court will defer to the parties to make a full listing. Highly significant provisions are in Section XX and Section XXii of the Sale Contract. The court also notes the Agency Relationships in Montana Real Estate Transactions which has pertinent language. It should be noted that other forms reflect that they are J.P. King forms. The Terms of Auction form is also pertinent.

should not be stayed or vacated.[4]  In essence, there are two arbitration clauses, one in the Sales Contract and one in the ALA.  The one in th Sales Contract is not only appropriate to consider, it is the most appropriate one.

This the 26th day of September, 2013.

*/s/ Robert B. Propst*
ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

---

[4] The court also references the briefs and other documents filed by the parties.

FILED
2013 Aug-19 PM 03:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

## J. P. KING AUCTION COMPANY, INC.

### REAL PROPERTY SALE CONTRACT

**WEST FORK RIVER HIDEAWAY**
**DARBY (RAVALLI COUNTY), MT**
**THURSDAY, AUGUST 16, 2012**

BIDDER NO. _1006_

THIS REAL PROPERTY SALE CONTRACT ("Sale Contract"), made August 16, 2012, by and between Russell M. Wicks and Evelyn L. Wicks, husband and wife (herein collectively referred to as "Seller"), whose address is 6415 N. Thimble View Place, Tucson, AZ, and

_Randy Marr and Max Caldwell_ ("Buyer"),
whose address is
_187 Hwy 42, Hickory Ridge, AR 72347_.

Seller is represented in this sale by J. P. King Auction Company, Inc. ("King"), an Alabama corporation headquartered at 108 Fountain Avenue in Gadsden, Alabama 35901 (telephone 800-662-5464 or 256-546-5217 and facsimile 256-543-8036) and its broker, Christie King Ray ("King's Broker") whose address is 108 Fountain Avenue, Gadsden, Alabama 35901 (unless otherwise noted, King and King's Broker collectively referred to as "Auctioneer").

NOW, THEREFORE, in consideration of the agreements and covenants herein, and other good and valuable consideration, the adequacy and receipt of which are acknowledged, the parties being duly authorized and empowered to execute this Sale Contract and intending to be legally bound agree as follows:

### ARTICLE I – AGREEMENT TO PURCHASE

Seller agrees to sell and Buyer agrees to buy, pursuant to the terms herein, the real property described below ("Property"). The terms for the Auction ("Terms of Auction") are incorporated into this Sale Contract which defines the entire agreement between Seller and Buyer for the purchase and sale of the Property, whether by auction ("Auction") or otherwise. The Terms of Auction complement this Sale Contract and may differ in some respects from it. In the event of any conflict between the Terms of Auction and this Sale Contract, the Sale Contract will control in all instances. In the event of a sale of the Property other than by Auction, Buyer is advised that the Terms of Auction are still incorporated into this Sale Contract to define the entire agreement between Seller and Buyer for the purchase and sale of the Property, and Buyer is advised to obtain, read, and fully understand the Terms of Auction before entering into this Sale Contract.

### ARTICLE II – THE PROPERTY

The Property is located at 7228 W. Fork Road, Darby, MT 59829, and more particularly described in the legal description contained herein ("Property"). Should any survey, now existing or later made, indicate greater or lesser acreage or square footage in the Property than represented by Seller or Auctioneer, no adjustment will be made to the purchase price ("Total Contract Price") to be paid by Buyer to Seller for the Property.

### ARTICLE III – TOTAL CONTRACT PRICE

The Property's selling price and scheduled payments follows:

HIGH BID PRICE: ................................................................ $ _1,850,000.00_

ADD – 10.00 % BUYER'S PREMIUM ........................................ $ _185,000.00_

TOTAL CONTRACT PRICE ................................................... $ _2,035,000.00_

LESS – EARNEST MONEY DEPOSIT (10.00%) ....................... $( _203,500.00_ )
Bidder Registration Check $50,000 (Check # _wire transfer_
Balance of EMD $ _153,500.00_ (Check # _____ ) – _needs to be wired_

BALANCE OF TOTAL CONTRACT PRICE OWED ................... $ _1,831,500.00_

Page 1 of 8

W. Fork River Hideaway
FINAL 8132012

EXHIBIT A

Attorney (White) Seller (Yellow) JPK (Pink) Buyer (Goldenrod)

All payments must be made in U.S. Dollars. Buyer's earnest money deposit ("Earnest Money Deposit") will be paid to Chicago Title Insurance, the designated escrow/closing agent ("Escrow Agent"), and Escrow Agent will administer the deposit and conduct the closing of the sale of the Property ("Closing"). This is a cash sale which is not contingent upon any matter including, but not limited to, Buyer's ability to obtain financing for this purchase. The balance of the Total Contract Price owed by Buyer for the Property does not include Buyer's Closing costs, any costs associated with financing, any prepaid or prorated Closing charges, or taxes applicable to Buyer.

### ARTICLE IV – DISCLAIMER

As a material part of the consideration for this Agreement, Seller and Buyer agree that the Property is being sold *"AS IS, WHERE IS, WITH ALL FAULTS"* and with all burdens, circumstances, defects, faults, dangers, hazards, issues, material facts, problems, and other relevant matters, whether latent or patent, whether past, present, or future, and whether or not referenced herein, or in the Terms of Auction, and Buyer knowingly, voluntarily, unconditionally, and irrevocably waives, releases, and discharges Seller and Auctioneer from any claim that Buyer may otherwise have had with respect to the Property, the Auction, this Sale Contract, and the transaction contemplated. To the fullest extent allowed by law, Seller and Auctioneer unconditionally disclaim any guarantee, representation, and warranty of every kind, whether expressed, implied, or statutory, whether oral or written, with respect to the Property, the surrounding area, the Auction, the Terms of Auction and all matters referenced therein (including, but not limited to, all matters referred to within this Article, plus the section on "Bidder's Due Diligence" included in the Terms of Auction), plus all other relevant matters, whether past, present, or future, and whether or not referenced herein, in the Terms of Auction, or elsewhere, except for limited warranties that may be given by Seller to Buyer in the deed of conveyance, or as expressly stated herein. Maps, depictions, and sketches included in the marketing material for the Auction are for illustration purposes only and neither Seller nor Auctioneer warrants or guarantees these materials or related information to be accurate or complete. Buyer acknowledges and agrees that it is Buyer's exclusive responsibility to make and independently verify such factual, legal, and other inquiries, inspections, investigations, and studies as Buyer deems appropriate, desirable, and necessary with respect to the Property, the Auction, this Sale Contract, and this sale, all of which will be at Buyer's exclusive cost, and Seller and Auctioneer will have no liability whatsoever on any basis or in any amount. Buyer acknowledges and agrees that, in executing this Sale Contract and purchasing the Property, Buyer is not relying upon any agreement, covenant, guarantee, promise, representation, or warranty of any kind or character whatsoever that Seller and Auctioneer have disclaimed, nor is Buyer relying upon any assertion, brochure, claim, document, information, literature, map, projection, sketch, or statement of any kind with respect to the Property and any improvements thereon, including the surrounding area and all relevant circumstances, facts, issues, and matters, whether past, present, or future, whether expressed or implied, whether oral or written, whether material or immaterial, and whether given or made by, or on behalf of, Seller or Auctioneer. Instead, Buyer is relying solely upon Buyer's independent due diligence, inspection, investigation, and findings with respect to the Property, the surrounding area, the Auction, the Terms of Auction and all relevant matters whether past, present, or future, and whether or not referenced herein, in the Terms of Auction, or elsewhere. Seller and Auctioneer will not be liable to Buyer for any relief, including, but not limited to, adjustment, allowance, damages, reformation, or rescission, based upon the failure of the Property to conform to any specific condition, expectation, standard, or any third-party documents or information. Buyer will look only to Seller, and not Auctioneer, with respect to all matters regarding the sale of the Property and this Sale Contract.

### ARTICLE V – FIXTURES AND PERSONAL PROPERTY

This sale includes all built-in appliances, cabinets, fixtures, carpet (attached wall-to-wall), installed systems (cooling, electrical, heating, lighting, mechanical, plumbing, and vacuum), in-ground plantings (including flowers, shrubbery, and trees), window treatments (blinds, drapes, and hardware), and all other items and things permanently attached to the Property. The in-home theatre chairs and all televisions will also be conveyed with the real property. No additional personal or other property is included in this sale.

### ARTICLE VI – DISCLOSURES

Any disclosures made and information given by Seller and/or Auctioneer to Buyer regarding the Property and any improvements thereon, the surrounding area, and all circumstances, facts, issues, and other matters relevant to this sale are provided subject to the disclaimers stated herein. All disclosures, information, representations, and statements made or given by any person are attributable solely to that person, and represent that person's belief at the time this Sale Contract was drafted on the information reasonably available to that party, but nothing is guaranteed or warranted to be accurate, complete, or correct and no such disclosures, information, representations, or statements may be considered as or relied upon by any party as a guaranty, warranty, covenant, or other promise. LEAD WARNING STATEMENT: In the event the Property includes any interest in residential real property built prior to 1978, federal law (42 U.S.C. 4852(d)) requires the following disclosure: "Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired

Page 2 of 8

memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase." A seller of an interest in such real property is required to provide a buyer with a lead hazard information pamphlet, disclose to the buyer the presence of any known lead-based paint, or any known lead-based paint hazards, in such housing and provide the buyer with any lead hazard evaluation report available to the seller, and permit the purchaser a 10-day period, unless the parties mutually agree upon a different period of time, to conduct a risk assessment or inspection for the presence of lead-based paint hazards. Buyer previously agreed to execute a "Lead-Based Paint Waiver" ("Waiver"),to be made part of this Sale Contract at or before the time Buyer pays the Earnest Money, fully waiving the right to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards on the Property, and Buyer has executed this "Waiver" and it is incorporated herein by reference. State law enforcement may maintain a database of known sex offenders who reside within the area. Information regarding sex offenders may be obtained by contacting local law enforcement authorities. Buyer relies exclusively upon Buyer's own due diligence and inquiry into this issue and Buyer acknowledges having done all of the research that Buyer desires to do or, in the alternative, Buyer waives the right to research this issue prior to entering into this Sale Contract. Buyer unconditionally and irrevocably acknowledges and agrees that Buyer has not relied upon Seller or Auctioneer for any information regarding this issue and Seller and Auctioneer are not required to provide any additional information regarding the proximity to the Property of registered sex offenders.

### ARTICLE VII – EARNEST MONEY DEPOSIT

Immediately upon the execution of this Sale Contract, Buyer will pay ten percent (10.00%) of the Total Contract Price for the Property as the Earnest Money Deposit to Escrow Agent to be held on deposit by Escrow Agent in a designated bank escrow account, insured by Federal Deposit Insurance Corporation, and Escrow Agent will administer the funds in accordance with this Sale Contract. This escrow account will be non-interest bearing, unless otherwise required by law. The parties agree Escrow Agent will be relieved of all liability and held harmless by them so long as Escrow Agent holds the Earnest Money Deposit and makes any disbursement from it in accordance with this Sale Contract and the Escrow Agreement previously executed by Escrow Agent with Seller and Auctioneer. In the event of any controversy regarding the Earnest Money Deposit, Escrow Agent will not be required to take any action, but may await the result of any proceeding, or at Escrow Agent's discretion, interplead the Earnest Money Deposit into a court of competent jurisdiction for determination, and Escrow Agent will thereafter have no liability whatsoever on any basis and for any amount with regards to the Earnest Money Deposit and this Sale Contract.

### ARTICLE VIII – BROKER INVOLVEMENT

Buyer warrants that Buyer (check one) ... [_____ is] ... [ X is not] ... represented by a qualified, licensed, real-estate broker in this transaction. If Buyer is represented by a broker, the broker's full name, firm, and address are:_____NONE_____.Buyer warrants not to have contacted or communicated with any real-estate agent or broker about the Property, other than Auctioneer and any broker identified in the previous paragraph, and no other real-estate agent or broker was in any way instrumental in effecting this sale of the Property and there are no brokerage commissions, expenses, fees, or other sums due to any other real-estate agent or broker. Buyer agrees to hold Seller and Auctioneer harmless against any claim by any real-estate agent or broker not properly registered with and qualified by Auctioneer in the Cooperating Broker Incentive Program (see below), and Buyer will indemnify Seller and Auctioneer against any action, arbitration, award, claim, cost, damage, deficiency, demand, expense, injury, judgment, liability, loss, or suit of every kind, including attorneys' fees and costs of defense, asserted by a real-estate agent or broker as a result of, or in relation to, the Auction, this Sale Contract, the transaction contemplated, or any related dealings involving Buyer, Seller, and/or Auctioneer. Buyer understands that upon Closing, Seller will pay Auctioneer a commission pursuant to the terms of a separate, written agreement.

### ARTICLE IX – COOPERATING BROKER INCENTIVE PROGRAM

If the Cooperating Broker Incentive Program is in effect for the Auction, a properly licensed broker ("Cooperating Broker") who timely registers and qualifies with Auctioneer in accordance with the terms of this program will be paid a commission by Seller at Closing, in accordance with the terms of this program, provided that both Cooperating Broker and the Buyer that Cooperating Broker represents fulfill all requirements under the Terms of Auction, this Sale Contract, and this incentive program. If for any reason Closing does not occur, including, but not limited to, the default of any party hereto, no commission will be due or paid to any Cooperating Broker and Seller and Auctioneer will have no liability on any basis and for any amount.

### ARTICLE X – NOT APPLICABLE
### ARTICLE XI – CASUALTY

All risk of loss or damage to the Property will be borne exclusively by Seller until Closing. Immediately upon Closing, all risk of loss will be borne exclusively by Buyer. In the event the Property is, in the opinion of Seller, significantly

damaged or destroyed by fire or other casualty after the execution of this Sale Contract and before Closing, Seller will have the option to restore the Property to its pre-casualty condition or cancel this Sale Contract, after giving written notice to Buyer of the option Seller selects. Any insurance proceeds resulting from a casualty condition after execution of this Sale Contract and before Closing shall inure to the sole benefit of Seller. In the event Seller chooses to cancel this Sale Contract, the Earnest Money Deposit will be promptly and fully refunded and this will be a complete and final settlement with Buyer of all of Seller's obligations to Buyer herein, or otherwise relating to the Property and this sale. Should Seller desire to restore the Property to its pre-casualty condition, Seller will have one hundred twenty (120) days, immediately following the date on which written notice is given to Buyer, to complete restoration. In the event Seller timely completes restoration, Seller will give written notice of this fact to Buyer and Closing will immediately occur. In the event Seller does not timely complete restoration, Buyer will have the option to give written notice to Seller of Buyer's intention to terminate this Sale Contract and Buyer's obligations herein will then be immediately ended and the Earnest Money Deposit will be promptly and fully refunded, together with any interest accrued thereon, if applicable, or Buyer may continue to seek performance from Seller under this Sale Contract.

### ARTICLE XII – SELLER'S BREACH

If Seller defaults in the performance of any term or obligation herein and Closing does not timely occur as a result, Buyer will have the option to give Seller written notice of Buyer's intention to terminate this Sale Contract and Buyer's obligations herein will be immediately ended and the Earnest Money Deposit will be promptly and fully refunded, together with any interest accrued thereon, if applicable, or Buyer may have all rights allowed by law and in equity and pursuant to this Sale Contract, including the right to pursue a claim against Seller for specific performance of this Sale Contract, including Seller's payment of Buyer's reasonable attorneys' fees and costs. In no event will Auctioneer have any liability whatsoever on any basis and for any amount as a result of Seller's breach of this Sale Contract or other wrongful act or omission. Auctioneer will only be liable for damages resulting from Auctioneer's gross negligence or willful misconduct and Auctioneer will not be liable for any breach of this Sale Contract by Seller.,

### ARTICLE XIII – BUYER'S BREACH

If Buyer defaults in the performance of any term or obligation herein and Closing does not timely occur as a result, Seller will give written notice to Buyer that the Earnest Money Deposit will be immediately forfeited to Seller and King (but not King's Broker) as reasonable liquidated damages and not as a penalty against Buyer. Seller and King (but not King's Broker) will equally split the Earnest Money Deposit between them and keep their respective shares. Buyer forever waives and releases any right to sue Seller, Auctioneer, or Escrow Agent to recover the Earnest Money Deposit, or any part thereof, on the grounds that it is unreasonable in amount, or that its retention by Seller and Auctioneer is wrongful or a penalty not agreed upon by the parties as reasonable liquidated damages. If Buyer defaults in the performance of any term or other obligation herein and Closing does not timely occur as a result, Seller will have all rights allowed by law and in equity and pursuant to this Sale Contract, including the right to pursue a claim against Buyer for additional damages, specific performance of this Sale Contract, or cancellation of the sale, and including Buyer's payment of Seller's reasonable attorneys' fees and costs. In no event will Auctioneer have any liability whatsoever on any basis and for any amount as a result of Buyer's breach of this Sale Contract or other wrongful act or omission. Auctioneer will only be liable for damages resulting from Auctioneer's gross negligence or willful misconduct and Auctioneer will not be liable for any breach of this Sale Contract by Buyer.

### ARTICLE XIV – CONVEYANCE AND TITLE

Seller will convey fee simple title to the Property to Buyer by general warranty deed, free and clear of all liens and encumbrances, except as specified in the "exceptions" of the title commitment, the Terms of Auction, this Sale Contract, and subject to all existing covenants, easements, restrictions, and matters of record. Buyer agrees to accept title to the Property subject to:(a) all standard exclusions and printed exceptions set forth in the owner's policy of title insurance, including all matters that would be disclosed by a current and accurate survey of the Property,(b) taxes and liens for taxes not yet due and payable, (c) easements for public utilities affecting the Property, (d) all other easements or claims to easements, covenants, restrictions, and rights-of-way affecting the Property; (e) rights and claims of any persons in possession, (f) all title exceptions referenced in the title commitment, (g) land-use laws, (h) applicable statutes, rules, and regulations, (i) zoning ordinances, and (j) all matters herein waived by Buyer (individually and collectively (a) through (j) are referred to as "Permitted Title Exceptions").If the title commitment reveals a defect in title which is not one of the Permitted Title Exceptions, or if prior to Closing a new defect in title is disclosed by an updated endorsement to the title commitment, which defect is not one of the Permitted Title Exceptions, prior to Closing Buyer may either waive such defect or give written notice of such to Seller and Escrow Agent not later than five (5) days from the date of discovery of such defect in title, whereupon Seller may, at its option, attempt to cure such defect prior to Closing, or decline to cure the defect. If Buyer has given written notice to Seller of a defect in title which Buyer does not waive, and Seller is unable or unwilling to cure the defect on or before Closing, this Sale Contract will be terminated without liability to either party and the Earnest Money Deposit will be promptly and fully refunded, together with any interest accrued thereon, if applicable, except that, upon written notice to Buyer, Seller will have the right, at Seller's sole election, to extend the date of Closing by up to sixty (60) days, but not longer, to allow time for Seller to attempt to cure any defect in title. Seller will not

Page 4 of 8

voluntarily create or cause any lien or other encumbrance to attach to the Property between the date this Sale Contract is made and Closing.

### ARTICLE XV – CLOSING

Closing will be conducted at the office of Escrow agent, Chicago Title Insurance Company ("Chicago Title"), whose address is 101 River Drive N. Lower Level, Great Falls, MT 59401, **on or before 5:00 p.m. on September 17, 2012** ("Closing Date"). You may contact Amy Daniels at Chicago Title at 406.453.7622. At Closing, Seller will deliver to Buyer the deed provided for herein to convey good and clear title to the Property to Buyer subject to the terms of the deed, and Buyer will pay to Seller the balance of the purchase price owed in cash or by confirmed bank wire transfer of funds. Seller will be solely responsible for the premium for the owner's policy of title insurance with Chicago Title, one-half of the escrow/closing fees, and Seller's attorney's fees. Buyer will be solely responsible for any and all recording costs, financing/loan policy premiums, one-half of the escrow/closing fees, any and all remaining closing or sale costs, and buyer's attorney's fees. The current year's assessments and any special assessments, association dues and fees, current year's ad valorem taxes, insurance, interest, rents, and all similar items applicable will be prorated between Seller and Buyer to the Closing Date, with Buyer being responsible for the day of Closing. Should any additional assessments, other costs, or taxes be levied or charged as a result of any change of use of the Property attributable to Buyer, such amounts will be the exclusive responsibility of Buyer to pay. **Closing may be conducted by mail or electronically by the digital transmission of proof of signatures.** Seller will grant Buyer possession of the Property immediately upon Closing.

### ARTICLE XVI – ASSIGNMENT AND THIRD PARTIES

Neither party may assign or transfer any interest in this Sale Contract without the prior, written consent of the other. Nothing contained in this Sale Contract, or in any document or instrument executed by a party in connection with the sale contemplated, will create any rights in, or be deemed to have been executed for, the benefit of any person or entity not a party hereto, except as expressly provided herein.

### ARTICLE XVII – AGENCY

The parties understand and agree that Auctioneer is acting solely as a single agent and exclusively representing Seller on this Sale Contract, the transaction contemplated, and all related matters, and Auctioneer is not acting as a sub-agent, Buyer's agent, or limited consensual dual agent.

### ARTICLE XVIII – HOLD HARMLESS AND INDEMNIFICATION

A party found pursuant to final adjudication to be at fault will hold a party found pursuant to final adjudication not at fault, as well as Auctioneer, harmless from, and indemnify the party not at fault against, any action, arbitration, award, claim, cost, damage, deficiency, demand, expense, indemnity, injury, judgment, liability, loss, obligation, or suit of every kind, including reasonable attorneys' fees and costs of defense, asserted by any person, real or artificial, or by any entity of government, that the party not at fault incurs as a result of any act, error, omission, or wrongdoing attributable to the party at fault or that party's agents, assigns, attorneys, brokers, contractors, directors, employees, invitees, licensees, members, officers, representatives, shareholders, or successors in interest, and which arises out of this Sale Contract, the transaction contemplated, or the related dealings of the parties, except as expressly provided herein.

### ARTICLE XIX – NOTICE

Any notice between the parties permitted, required, or otherwise relating to this Sale Contract, the transaction contemplated, or the related dealings of the parties, will be given in writing including, but not limited to, notice which addresses approval, breach, cancellation, claim, Closing, complaint, consent, default, demand, objection, option, termination, waiver, or exercise of right. Notice will be deemed given by a party and effective on the date when personally delivered to the other party or, in lieu of personal delivery, when addressed to the other party at the address set forth herein and deposited in the mail handled by the United States Postal Service and sent certified mail with postage prepaid and a receipt retained, or sent by a nationally-recognized overnight courier or delivery service with a receipt retained. A copy of any notice will simultaneously be given to Auctioneer at the addresses listed on page one of this Sale Contract.

### ARTICLE XX – LEGAL ACTION AND ARBITRATION

Any action, claim, controversy, counterclaim, dispute, or proceeding arising out of the Property Issues and involving Seller, Bidder, Buyer, or Auctioneer, in any combination (each a "Party"), whether controlled by federal or state law, and whether an issue of law or equity, including the determination of the scope and applicability of this agreement to arbitrate, will be determined and resolved exclusively by final and binding arbitration, with no appeal permitted, except as provided by applicable law for the judicial review or enforcement of arbitration decisions. The arbitration will be administered by Judicial Arbitration and Mediation Services, Inc. ("JAMS"), or its successor, and decided by a panel of three (3) independent arbitrators, except that a Party may elect to reduce the number of arbitrators from three (3) to one (1), unless that election is opposed by another Party in a written objection timely filed with JAMS. Judgment on the arbitration award may be entered in any court having jurisdiction. The Parties waive the right to any legal action and trial by jury. The costs of arbitration, including the fees and expenses of the arbitrators, but not including the Parties' attorneys' fees, will initially be paid equally by the Parties. The prevailing Party will be entitled to collect from the other its full costs associated with the arbitration, including reasonable attorneys' fees. All aspects of any arbitration will be permanently kept confidential and not disclosed in any form or manner to any entity, media, or person, and the Parties will jointly move the court

Page 5 of 8

entering judgment on the arbitration award to so order. Any arbitration must be commenced within two (2) years from the date when the cause of action accrues or it will be forever barred. The right of arbitration will accrue, and the two (2) year limitation period will begin to run, on the date the breach, damage, or injury is sustained and not when the resulting damage or harm is discovered. To the fullest extent allowed by law, neither Seller nor Auctioneer will be liable for any consequential, exemplary, incidental, indirect, punitive, or special loss or damage (including, but not limited to, damage to property or loss of use, time, income, or profits) that might arise out of the Auction, offering or sale of the Property, or any related matter except as a result of damages caused by such party's gross negligence or willful misconduct.

### ARTICLE XXI – BINDING EFFECT

This Sale Contract will be binding upon the parties and their agents, assigns, attorneys, beneficiaries, brokers, directors, distributees, employees, executors, heirs, legatees, members, officers, representatives, shareholders, and successors in interest.

### ARTICLE XXII – CHOICE OF LAW, JURISDICTION, AND VENUE

This Sale Contract, the transaction contemplated, and all related dealings of the parties will be exclusively construed and governed in accordance with the laws of the State of Montana, without regard to its conflict of laws principles. The exclusive jurisdiction and venue for any controversy or claim and the settlement thereof between the parties will be the County of Ravalli in the State of Montana, or as mutually agreed by the Parties.

### ARTICLE XXIII – SEVERABILITY, HEADINGS, PRONOUNS, AND CONSTRUCTION

If any clause or provision of this Sale Contract is held illegal, invalid, or unenforceable, it is the parties' intention that the remainder of this Sale Contract will not be affected and, in lieu of such clause or provision that is held illegal, invalid, or unenforceable, there will be added, as a part of this Sale Contract, a clause or provision as similar in term and effect as such illegal, invalid, or unenforceable clause or provision as may be possible, legal, valid, and enforceable. Article headings are for reference only and not intended to expand or restrict the scope or substance of the provisions of this Sale Contract. Any reference herein to an Article heading includes all relevant sections, subsections, and paragraphs within that Article. Words used in the present tense also include the past and future tense, as the context requires. Wherever used in this Sale Contract, the singular will include the plural, the plural will include the singular, and pronouns will be read as masculine, feminine or neuter, as the context requires. The parties agree that this Sale Contract have been mutually agreed upon by them and no legal inference, presumption, principle, or other rule of draftsmanship or construction will be used in favor of or against either of them.

### ARTICLE XXIV – MISCELLANEOUS

Buyer certifies to be of legal age and have full capacity and competence to understand, enter into, execute, and deliver this Sale Contract. If Buyer is purchasing the Property on behalf of an arm of government or business entity (e.g., corporation, limited liability company, etc.) ("Artificial Person"), Buyer will be personally liable under this Sale Contract until such time as the Artificial Person presents Seller with acceptable, written evidence of the Artificial Person's good standing in its state of formation, plus a duly-passed and executed resolution or similar written authority from its board of directors or other governing authority that authorizes the purchase of the Property and agrees for the Artificial Person to be bound by this Sale Contract. This Sale Contract may be signed in multiple counterparts and each will be an original of this Sale Contract, with all counterparts constituting a single instrument. A facsimile signature will be considered as valid as an original signature. This Sale Contract and the incorporated Terms of Auction contain the entire undertaking between the parties regarding the Auction, the transaction contemplated, and all related dealings of the parties, and there are no oral or written agreements, inducements, promises, representations, or warranties other than those expressly set forth. This Sale Contract supersedes any previous agreement, negotiation, or understanding between the parties regarding the transaction contemplated, and such have been merged here and will not survive execution of this Sale Contract. No deletion, modification, supplement, or waiver of any term of this Sale Contract will be effective unless made in writing and executed by the parties with the same formality as this Sale Contract. The failure of either party to insist upon the strict performance of any term of this Sale Contract will not be construed as a waiver of any subsequent default of the same or similar nature. Each party had the opportunity to seek the independent advice of legal counsel of its choosing and each has either done so or has voluntarily decided to forgo such advice, with full understanding of the risk involved in this course with regard to the Property, Auction, Sale Contract, and this sale. Each party acknowledges that it has received and read the Terms of Auction and this Sale Contract in their entirety, understands and fully accepts all of the terms contained, and has received an executed copy of this Sale Contract. In addition to any other attachments, exhibits, or other documents or materials referenced herein, the following Attachments are attached hereto and incorporated herein by reference:

| | | |
|---|---|---|
| Attachment I | – | Agency Disclosure |
| Attachment II | – | Property Specific Disclosures |
| Attachment III | – | Title Commitment |

Page 6 of 0

W. Fork River Hideaway
FINAL 8132012

Attorney (White) Seller (Yellow) JPK (Pink) Buyer (Goldenrod)

No. 6730   P. 6

Sep. 25. 2013  1:00PM

### ARTICLE XXV – TIME OF THE ESSENCE

Time is of the essence of this Sale Contract. Each party will fully perform all respective obligations herein at such times as to ensure that Closing occurs on the date specified, or any mutually agreed-upon extension of that date.

### ARTICLE XXVI – SURVIVAL

Except for those terms and provisions relating to disclaimers, waivers, and indemnifications, the terms and conditions of this Sale Contract will be deemed merged into the deed transferring title from the Seller to the Buyer.

Page 7 of 8

W. Fork River Hideaway
FINAL 8132012

Attorney (White) Seller (Yellow) JPK (Pink) Buyer (Goldenrod)

No. 6730   P. 7

Sep. 25. 2013 1:00PM

IN WITNESS WHEREOF, the parties being duly authorized and empowered have agreed to the terms herein and executed this Sale Contract intending to be legally bound.

ADDRESS: _____

_____

SELLER:
Signature _Susan M Wicker_
Signature _Evelyn L. Wicker_

ADDRESS: 2005 AIRPARK
WYNNE, AR 72396

BUYER:
Signature _Nava Chadwell_
Print Name _Mitx A. Chadwell_
Social Security No. _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_
Federal Tax ID No. _____
Phone No. (Work) _870-238-7085_
(Home) _870-238-4344_

ADDRESS: 1020 Oakwood Dr.,
Wynne, AR 72396

BUYER:
Signature _Randy Marr_
Print Name _Randy Marr_
Social Security No. _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_
Federal Tax ID No. _____
Phone No. (Work) _870-697-2626_
(Home) _501-626-1377_

Page 8 of 8

VJ. Fork River Hideaway
FINAL 8132012

Attorney (White) Seller (Yellow) JPK (Pink) Buyer (Goldenrod)

Aug 18 12 04:37p   Randy Marr   870-697-2626   p.1

Sep. 25. 2013 1:00PM   No. 6730   P. 8